## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HILLARY LEBOWITZ, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 10-00233 |
| | : | |
| TACONY ACADEMY CHARTER SCHOOL, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this _____ day of _____ 2010, upon consideration of the Motion of Defendants Tacony Academy Charter School and Stacey L. Cruise to Dismiss Plaintiff's Complaint and plaintiff's response thereto, it is hereby ORDERED that the motion is denied.

                   BY THE COURT:

                   _____
                                 J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 10-00233 |
| TACONY ACADEMY CHARTER SCHOOL, et al., | : |
| Defendants | : |

**PLAINTIFF'S RESPONSE TO MOTION OF DEFENDANTS
TACONY ACADEMY CHARTER SCHOOL AND STACEY L. CRUISE
TO DISMISS THE COMPLAINT**

Plaintiff, Hillary Lebowitz, ("Lebowitz"), opposes the Motion of Defendants Tacony Academy Charter School and Stacey L. Cruise to Dismiss the Complaint for the reasons set forth in the accompanying memorandum of law.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.**

Jill Fisher, Esquire
David F. McComb, Esquire

1818 Market Street, 13th Floor
Philadelphia, PA 19103
Ph: (215) 569-2800
Fx: (215) 569-1606
*Attorneys for Plaintiff Hillary Lebowitz*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 10-00233 |
| TACONY ACADEMY CHARTER SCHOOL, et al., | : |
| Defendants | : |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
MOTION OF DEFENDANTS TACONY ACADEMY CHARTER SCHOOL
AND STACEY L. CRUISE TO DISMISS THE COMPLAINT**

## I. INTRODUCTION

Plaintiff, Hillary Lebowitz ("Lebowitz"), has averred in her complaint that she was fired from her position with Tacony Academy Charter School ("Tacony") because she reported to her supervisors the physical abuse of a student by a professional staff member of Tacony. After reporting the abuse she witnessed, Defendants fired her, under the guise that she "wasn't a good fit."

Defendants have now moved the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss several claims set forth of Lebowitz's complaint.[1] It is clear, however, that Defendants' arguments do not support dismissal of Lebowitz's claims at the pleading stage.

---

[1] It was a challenge to tell precisely which counts Defendants seek to dismiss. Their proposed order recites that "Counts I, II, IIIa nd V[sic]" are to be dismissed, but the first two pages of their motion variously request that counts I, II, III and IV be dismissed (Motion at 1, ¶2). Nonetheless, because Defendants' Brief raises arguments as to Counts I, II, III, and V (not IV), Lebowitz responds in this Memorandum of Law in kind. Also, Defendants' Brief and accompanying documents contain literally dozens of typographical errors that appear to be based on a formatting error, thus making it difficult to read. For example, in one quotation on page 14, defendants wrote that the following are required to demonstrate a conspiracy: "…any of the Defendantst o plot, plan, or conspire to carry out the allegedc haino f events."[sic].

Under the now familiar standard set out by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007), in order to survive a defendant's 12(b)(6) motion, the plaintiff's complaint must plead enough facts to make it "plausible" that the plaintiff is entitled to relief with a reasonable expectation that discovery will reveal evidence to substantiate the legal elements of the claims asserted. A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, it is required only to raise a right to relief above the speculative level, on the assumption that the allegations in the complaint are true. *Id.* at 1964-65 (citations omitted). In making this determination, a court must accept all well-pleaded facts in the complaint as true and view the allegations in a light most favorable to the plaintiff. *Maio v. Aetna, Inc. et al.*, 221 F.3d 472, 482 (3d Cir. 2000).

Applying the *Twombly* standard here, it is readily apparent that the well-pleaded facts of the complaint adequately demonstrate the plausibility of Lebowitz's entitlement to relief on all counts of her complaint.

## II.  DISCUSSION

### A.  Factual Allegations of the Complaint.

Lebowitz set out the following factual averments in her complaint pertaining to her First Amendment, whistleblower and civil conspiracy claims.

At the beginning of the 2009 school year, Lebowitz learned that Tacony had not completed required 30-day "change of place" notices sent to parents of students receiving special education services. (Complaint, ¶17). About September 30 or October 1, 2009, she sent an email to Ashley Redfearn-Neswick ("Redfearn-Neswick"), Dean of Students and her direct supervisor at Tacony, advising her that the 30-day change of place notices had not been completed as required. (Complaint, ¶18.) "In response to her email, the Principal and CEO of

Tacony, Rene Garner ("Garner"), contacted Lebowitz, stating merely that Tacony was in full-compliance with the required change of place notices. (Complaint, ¶19.)

Subsequent to and on the heels of reporting the above-referenced compliance issue, on or about October 14, 2009, Lebowitz observed Benjamin Randall, a special education coordinator at Tacony, physically dragging and restraining a student on the floor in the school's hallway. (Complaint, ¶20.) Lebowitz immediately reported to Redfearn-Neswick what she had observed Randall doing with the student. Based on information and belief, Redfearn-Neswick, in turn, reported Lebowitz' observations to Garner and Stacey L. Cruise, Executive Director of Tacony ("Cruise"). (Complaint, ¶21.) Lebowitz reported Randall's physical assault on the student to Redfearn-Neswick because she reasonably believed that Randall's conduct was intentional, improper, unsafe, prohibited by school and/or school district policy and violated, among other laws, regulations, or codes, Pennsylvania's Child Protective Services Law ("CPSL"), 23 Pa.C.S. Section 6301 *et seq.* in that it was committed with disregard of a substantial and unjustifiable risk of physical and emotional harm to the student. (Complaint, ¶22.)

According to the complaint, at no time following Lebowitz' report of Randall's conduct did Defendants report Randall's actions to any governmental department or authority, as required by the CPSL. (Complaint, ¶23.) In a meeting the next day, October 15, 2009, attended by, among others, Lebowitz, Garner and a lawyer representing Defendants Tacony and Santilli and Thompson, Lebowitz reiterated her belief that Tacony was not in compliance with the law regarding a student's Individual Education Plan ("IEP"). Lebowitz was told, among other things, that that she did not need to access IEP's, when in fact, she did. Lebowitz was also told (on that date or shortly thereafter) that Randall's conduct was not "reportable." (Complaint, ¶24.)

3

In a meeting on October 20, 2009, during which Lebowitz thought she would be given the opportunity to discuss her concerns, Cruise told Lebowitz that she was "not a good fit." (Complaint, ¶25.) The next day, October 21, 2009, Cruise encouraged Lebowitz to sign a severance agreement that had already been prepared, but told her whether she signed it or not, her last day of employment was October 23, 2009. (Complaint, ¶26.)

Lebowitz asserts in her complaint that, based upon information, observation and belief, Cruise and Gerald Santilli, in conspiracy with each other and other Defendants, were instrumental in the decision to terminate her employment and unduly influenced Tacony's Board of Directors to approve the termination. (Complaint, ¶27.) On November 6, 2009, Lebowitz received a Notice of Termination letter dated October 30, 2009 and a memorandum of suspension dated October 30, 2009, which stated, for the first time, that the reason for Lebowitz' termination was "unsuccessful completion of a probationary period." (Complaint, ¶28.) Lebowitz asserts further that the reason given to her for her termination was not the real reason, but rather was a pretext and cover-up of the wrongdoing on the part of Randall, in part, in order not to jeopardize a significant funding source, and to protect themselves from potential lawsuits and civil penalties. (Complaint, ¶28.)

Lebowitz avers in her complaint that Defendants Cruise and Gerald Santilli, and Defendants Tacony and Santilli and Thompson, acted in concert with and reached an agreement with each other to terminate Lebowitz' employment, in furtherance of Defendants' policy, practice, and/or custom of covering up acts of wrongdoing and/or retaliating against individuals who report such wrongdoing to avoid potential legal or other consequences. (Complaint, ¶29.) Lebowitz avers that Defendants' conduct was motivated by evil motive and/or intent and/or

4

reckless and callous indifference to her federally and statutorily protected rights. (Complaint, ¶30.)

### B. **Plaintiff Has Sufficiently Pled a First Amendment Claim in Count I.**

Despite Lebowitz's detailed, chronological factual recitation of the events leading up to her termination, Defendants contend, in largely boilerplate language, that Lebowitz's First Amendment claim in Count I (Violation of Plaintiff's First Amendment Right to Free Speech) should be dismissed because it fails to contain the specificity required by *Twombly*. (Defendants' Brief, at 8.)  This argument must fail because under the applicable standards, Lebowitz has sufficiently alleged a violation of her First Amendment rights.

A public employee's statement is protected by the First Amendment when, "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general  as a result of the statement he made." *Hill*, 455 F.3d at 241 (*quoting Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006).[2]

With regard to the first factor, the fact that Lebowitz, like any other individual working in a school in any capacity, even in the office or cafeteria, is mandated under the CPSA to report suspected child abuse does not translate to mean that she was not speaking as a citizen, as she was walking down the hallway, not engaging in any activity for which she was hired, she observed and reported Randall's physical mistreatment of a student.[3]  It truly would be

---

[2]  In *Hill*, the Third Circuit reversed the district court's dismissal of the First Amendment claims pursuant to Rule 12(b)(6), noting that the record did not permit a determination of whether certain of Hill's complaints were a matter of public concern and whether the Borough of Kutztown had an adequate justification for treating Hill's complaints differently had they been made by a member of the general public. 455 F.3d at 242-43. The court held "[t]hat determination must be made after an examination of 'the content, form, and context of [the] statement, as revealed by the whole record.'" [citations omitted].

[3]

anomalous if mandated reporters of child abuse, those most likely to be in a position to observe it, could be silenced by their employer for having done so. Such a position is directly contrary to the CPSA and the policy repeatedly expressed in various federal and state whistleblower provisions, including Pennsylvania's Whistleblower Law, 43 Pa. C.S.A § 1421 et seq. (the "Whistleblower Law"), which afford protection against losing one's job for reporting wrongdoing.

*Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008), is instructive in this case. In *Reilly*, an Atlantic City police officer testified for the government in a police corruption trial and subsequently was disciplined. The Third Circuit noted that Reilly's obligation to speak truthfully arose out of his duty as a citizen, and thus such speech was afforded First Amendment protection:

> T]he action of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully. When a government employee testifies truthfully, s/he is not "simply performing his or her job duties," rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence.

*Reilly*, 532 F.3d at 231. See also *Karchnak v. Swatara Township*, 2009 WL 2139280 (M.D. Pa 2009) ("Even if an employee's official responsibilities compel him to appear in court, testimony under oath, is the sort of conduct performed by citizens and protected by the First Amendment.")

Like Reilly and Karchnak, Lebowitz's independent obligations, one as a citizen and the other as a mandated reporter of child abuse, do not strip her speech of First Amendment protection. Thus, Defendants' argument that Lebowitz's reporting of the physical abuse was done solely because she was a mandated reporter under the CPSA, not a citizen, must fail.

Next, Lebowitz's report about witnessing Randall's physical assault of a student plainly was a matter of public concern. Speech generally involves a matter of public concern if it "attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). What could possibly be more of a matter of public concern than the physical abuse of a student entrusted to the care of a public school? (As a practical matter, Defendants do not even argue that Lebowitz's reporting of the assault was not a matter of public concern, or that it involved purely private issues.)[4]

Clearly, Lebowitz has adequately pled a violation of her First Amendment rights in Count I of her complaint.[5]

### C. Plaintiff Has Sufficiently Pled First Amendment Retaliation and Conspiracy Claims in Count II.

Defendants' argument that Count II of Lebowitz's complaint fails to state a claim under the First Amendment for retaliation and conspiracy is without merit.

First, to establish a First Amendment retaliation claim, a plaintiff must plead that her activity is protected by the First Amendment and that the protected activity was a substantial factor in the retaliatory action. *Gorum*, 561 F.3d at 184; *Hill*, 455 F.3d at 241. The first factor is a question of law; the second factor is a question of fact. *Id.* If these two elements are satisfied, the burden shifts to the defendants to demonstrate that the same action would occur if the speech

---

[3]. Defendants also do not address in their arguments the issue of whether they had justification for treating Lebowitz differently than any other member of the public who reports suspected child abuse.

[5] It is Lebowitz's position, for purposes of this Memorandum of Law, that her reporting the untimeliness of the change of placement notices was a violation of a law, regulation and/or code. Whether or not change of placement notices were part of her job responsibilities is an issue to be fleshed out during discovery. Therefore, and because the averments regarding Lebowitz's good faith reporting of suspected child abuse, on their own, are sufficient to withstand dismissal at this stage, this response to Defendants' Motion to Dismiss will focus on the reporting of the child abuse.

7

had not occurred. *Green v. Phila. Hous. Auth.*, 105 F.3d 882, 885 (3d Cir.1997). For all of the reasons set forth above in Section II. B., Lebowitz clearly has sufficiently pled that her activity (speech) was protected by the First Amendment.

Second, given the proximity of the two events, there can be no doubt that Lebowitz more than adequately pled that her reporting of the suspected child abuse was a substantial factor in the retaliatory action, i.e., her termination.[6] For purposes of Rule 12(b)(6), Lebowitz has made more than a "plausible" showing of the connection between her October 14, 2009 reporting of the Randall assault and her meetings with Defendants on October 20, 2010 and October 21, 2010, when she was told that she was "not a good fit," was encouraged to sign a severance agreement, and told her last day of employment would be October 23, 2010.

The averments in Count II of Lebowitz's complaint are more than sufficient to state a claim for First Amendment retaliation both substantively and under the pleading requirements of *Twombly*.

Defendants' contention that Lebowitz has failed to plead a conspiracy under the First Amendment also lacks merit. To allege a conspiracy, a party must make specific factual allegations of a combination, agreement or understanding among all or between any of the Defendants to plot, plan, or conspire to carry out the alleged chain of events. *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

Paragraphs 17 through 28 of the complaint provide more than adequate factual specificity as to (1) the period of the conspiracy; (2) the object of the conspiracy; (3) the overt acts taken in furtherance of the conspiracy; and (4) the action taken by each co-conspirator in furtherance of the

---

[6] Lebowitz averred that there was a causal link between her protected activity and her termination, which constituted an adverse employment action, and which was pretextual and retaliatory in nature. She averred that the protected activity was a substantial and/or motivating factor in her termination and that, as a result of the conspiracy and retaliatory acts by Defendants, she has been denied constitutionally and statutorily protected rights. (Complaint, ¶¶45-47.)

conspiracy. Moreover, in paragraph 29 of the complaint, Lebowitz avers that [all] Defendants acted in concert with and reached an agreement with each other to terminate Lebowitz' employment, in furtherance of Defendants' policy, practice, and/or custom of covering up acts of wrongdoing and to avoid potential legal or other consequences.

These averments clearly are sufficient to state a claim under the First Amendment of conspiracy among the Defendants. [7]

### D. Plaintiff Has Sufficiently Pled a Claim Under Pennsylvania's Whistleblower Act in Count III.

Defendants argument that Count III of Lebowitz's complaint (Violation of Pennsylvania's Whistleblower Law) likewise lacks any merit.

The Whistleblower Law provides, in relevant part, that no employer may discharge an employee because the employee makes a good faith report or is about to report, an instance of wrongdoing or waste. 43 P.S. §1423. Defendants contend that the wrongdoing that Lebowitz reported, Randall's assault on a student, does not constitute "waste" or "wrongdoing" within the definition of the Whistleblower Law. This argument is sorely misplaced.

"Waste" is defined as "[A]n employer's conduct or omissions which result in a substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." Wrongdoing" is defined as "[A] violation which is not merely technical or minimal in nature of a federal or state statute or regulation, of a

---

[7] Defendants contend that there are no allegations regarding the involvement of Tacony Executive Director Stacey Cruise in the conspiracy. *See* Defendants' Brief at 14. That is patently incorrect. *See* Complaint at ¶13 "Defendant Stacy L. *Cruise* ("Cruise"), Executive Director of Tacony, was at all times relevant hereto, Lebowitz' supervisor and/or employer and conspired with other Defendants to unlawfully terminate Lebowitz' employment"; ¶25 "In a meeting on October 20, 2009, during which Lebowitz thought she would be given the opportunity to discuss her concerns, *Cruise* told Lebowitz that she was "not a good fit"; ¶ 26 "In a meeting with *Cruise* the next day, October 21, 2009, *Cruise* encouraged Lebowitz to sign a "severance" agreement, but told her whether she signed it or not, her last day of employment was October 23, 2009" ¶27 "Based upon information, observation and belief, *Cruise* and Gerald Santilli, in conspiracy with each other and other Defendants, were instrumental in the decision to terminate Lebowitz' employment and unduly influenced Tacony's Board of Directors to approve the termination.

political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. §1422.

Despite pages of quotes from the Whistleblower Law, the gist of Defendants' argument is stated in one sentence of one paragraph (found on page 18 of their Brief) – that is, "[t]he allegations do not allege conduct or omissions that would constitute waste or wrongdoing under the Whistleblower Law."

Defendants are mistaken. In her complaint, Lebowitz avers that the physical abuse she witnessed and reported constitutes "wrongdoing" under the Whistleblower Law because it was a violation of, among other laws, regulations, or codes of conduct designed to protect the interests of the public, the CPSL.[8] (Complaint, ¶52.) Just because Defendants argue that Randall's assault was not "reportable" under the CPLS does not automatically extinguish Lebowitz's Whistleblower claim at the pleading stage.[9]

Given the factual averments in plaintiffs' complaint, it is certainly plausible, and a jury could readily conclude, that Lebowitz made a good faith report or abuse and that was the reason for her termination. (Defendants do not argue that Lebowitz's reports of wrongdoing were motivated by malice or personal benefit, rather than a concern for the well-being and safety of the students.)

Thus, Count III of Lebowit'z complaint should not be stricken.

### E. Plaintiff Has Sufficiently Averred a Civil Conspiracy Claim in Count V.

---

[8] Defendants do not argue in their Brief that Lebowitz's cause of action for violation of the CPSA (Count IV) should be dismissed.

[9] Defendants' failure to send "change of place" notices as required under the IDEA may very well constitute "waste" under the Whistleblower Law definition because of the possibility of the loss of state funding if the IDEA is violated.

10

Defendants' final argument, that Count V of the complaint fails to state a civil conspiracy claim, is duplicative of their arguments regarding the First Amendment conspiracy claims in Count II. Defendants' argument that Lebowitz does not identify any defendant by name or recite any supporting narrative facts, again, is specious. Lebowitz clearly has averred with appropriate specificity the necessary elements of the civil conspiracy claims against each defendant. *See* Fed. R. Civ. P. 8 (d)(2) (party may set out two or more statements of claim alternatively); *Brown v. Vlamet-Appleton,* 77 F.3d 860, 863 n.10 (5th Cir. 1996)(an acceptable reading of the pleadings alleges that each defendant engaged in the tortious conduct therein described).

### III.  CONCLUSION

Each count of Lebowitz's complaint adequately states a cause of action for purposes of defeating a Rule 12 (b)(6) motion. Accordingly, Lebowitz respectfully requests that Defendants' motion to dismiss be denied.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO, KAPLAN, SCHAER & TODDY, P.C.**

*[signature]*

Jill Fisher, Esquire
David F. McComb, Esquire

1818 Market Street, 13th Floor
Philadelphia, PA  19103
Ph: (215) 569-2800
Fax: (215) 569-1606
*Attorneys for Plaintiff Hillary Lebowitz*