# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ | :   Civil Action No: 10-00233 |
| | : |
|       v. | : |
| | : |
| TACONY ACADEMY CHARTER SCHOOL, | : |
| SANTILLI & THOMPSON, LLC, GERALD L. | : |
| SANTILLI AND STACEY L. CRUISE | : |

## ORDER

AND NOW, this          day of                    , 2010, upon consideration of the Defendants

Tacony Academy Charter School, Stacey L. Cruise, Santilli & Thompson LLC and Gerald

Santilli's Motions to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6), any Response thereto, and the

parties' Supplemental Briefs, it is hereby **ORDERED** and **DECREED** that Defendants' Motions

are **GRANTED**.

BY THE COURT:

_____
                                        J.

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**BY:** Joseph J. Santarone, Jr., Esquire
    ID#  45723
**BY:** John P. Gonzales, Esquire
    ID#  71265
620 Freedom Business Center, Suite 300
King of Prussia, PA  19406
(610) 354-8282

**WEBER GALLAGHER SIMPSON**
**STAPLETON FIRES & NEWBY LLP**
**By**: Tracy A. Walsh, Esquire
    ID# 62481
**By**:  Jamie Panzer, Esquire
    ID# 203216
2000 Market Street
13th Floor
Philadelphia, PA  19103
(215) 972-7900

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ | : Civil Action No: 10-00233 |
| | : |
| v. | : |
| | : |
| TACONY ACADEMY CHARTER SCHOOL, | : |
| SANTILLI & THOMPSON, LLC, GERALD L. | : |
| SANTILLI AND STACEY L. CRUISE | : |

---

## DEFENDANTS' JOINT SUPPLEMENTAL BRIEF IN SUPPORT OF MOTIONS TO DISMISS

Defendants, Tacony Academy Charter School, Stacey L. Cruise, Santilli & Thompson, LLC and Gerald Santilli, by and through their respective undersigned counsel, John P. Gonzales, Esquire and Tracy A. Walsh, Esquire, file this Supplemental Brief in Support of Defendants' Motions to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and aver:

# I.    **FACTS**

Plaintiff was hired to serve as the school social worker/counselor at Tacony Academy Charter School in June 2009. (Complaint, Document No. 1, ¶15).  Plaintiff asserts that she was terminated in retaliation for her internal report regarding the school's alleged non-compliance with change of place notices for students' Individualized Education Plans ("IEPs"), which Plaintiff believed was in violation of the Individuals with Disabilities Education Act ("IDEA"), and for reporting an alleged incident of suspected abuse of a student involving the Special Education Coordinator.[1] (Complaint, ¶15).

In the Complaint, the Plaintiff claims that her duties included, but were not limited to, crisis management, student programs and services, and participating as a member of students' IEP teams. (Complaint, ¶16).[2]  Plaintiff alleges that, "in performing her duties," she learned that Tacony Academy had not completed required thirty day "change of place" notices for students receiving Special Education services, which are to be sent to the parents of students receiving these services.[3] (Complaint, ¶17).  On or about September 30, 2009 or October 1, 2009, Plaintiff

---

[1] The individual identified by the Plaintiff in her civil action complaint as the Special Education Coordinator will be referred to by the Defendants heretofore as "B.R."

[2] See also *Job Description for School Social Worker/Counselor*, attached hereto as Exhibit A.  Duties identified therein include, but are not limited to: reporting abuse/neglect to supervisors and appropriate agencies as directed and acting as the liaison between school, family and agencies; assisting Dean of Students and Special Education Coordinator with grouping and placement of students, including necessary evaluations; collaboration with CEO, Dean, Teachers and parents to discuss behavioral and school issues and determine a plan of action; identifying students who need specialized programs and services, recommending and providing resources to parents and guardians; regular meetings with Special Education Coordinator, Teachers and Therapists regarding special needs children and providing observations/ progress monitoring results, best practices for behavioral support and modification. This Court may consider the job description of the Plaintiff as having been referenced and relied upon by the Plaintiff in the substantive allegations of her Complaint. See, Pension Benefit Guar.Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993) (in resolving a 12 (b)(6) Motion to Dismiss, a court may look beyond the complaint to matters of public record, including court files and records, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion).

[3] Despite the averments of the Plaintiff, there is no such 30-day change of place notice requirement under the IDEA in relation to the IEPs.  Therefore, this alleged report of wrongdoing is insufficient under the Whistleblower Act where wrongdoing is defined as:

> "A violation which is not of a merely technical or minimal nature of a federal or state statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. §1422.

asserts that she sent an e-mail to Ashley Redfearn-Nefwick, Dean of Students and Plaintiff's direct supervisor at Tacony, advising her that the thirty day change of place notices had not been completed as required. (Complaint, ¶18). In response to her email, Renee Garner, Principal and CEO of Tacony Academy, contacted Plaintiff and stated that Tacony was in full compliance with the required change of place notices. (Complaint, ¶19). Plaintiff alleges that, in a meeting on October 15, 2009, attended by Plaintiff, Renee Garner and a lawyer representing Tacony Academy and Santilli & Thompson, Plaintiff reiterated her belief that Tacony was not in compliance with the law regarding IEPs. (Complaint, ¶24). Plaintiff alleges that she was told, among other things, that she "did not need to access IEPs" when in fact, she did. (Exhibit "A," ¶24).

On October 14, 2009, Plaintiff claims that she observed B.R. physically dragging and restraining a student on the floor in the school's hallway. (Complaint, ¶4, 20). Thereafter, Plaintiff allegedly reported the incident to Ashley Redfearn-Nefwick, who in turn reported Plaintiff's observations to Renee Garner and Stacey Cruise. (Complaint, ¶21). Plaintiff asserts that she was a school employee and a mandated reporter under the CPSL. (Complaint, ¶57-58). Plaintiff alleges that she was also told on that date, or shortly thereafter, that B.R.'s conduct was not reportable. (Complaint, ¶24).

## II.   ARGUMENT

### A. Plaintiff Has No Viable First Amendment Retaliation Claim

#### 1. Speech Pursuant to an Employee's Official Duties

In Pickering v. Board of Education, 391 U.S. 563, 569 (1968), the Supreme Court identified the standard for determining whether an employee's speech is protected under the First

---

Because there is no requirement to issue "30-day change of place notices" under the IEP there can be no violation of the same by the Defendants.

Amendment.  This requires a two step analysis to: 1) determine whether the employee's speech is a matter of public concern and; 2) balancing between the interests of the employee as a citizen in commenting on matters of public concern and the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees.  Pickering, 391 U.S. at 568.  Whether an employee's speech is protected under the First Amendment, including whether the employee spoke as a citizen on a matter of public concern, and the Pickering balancing test, presents questions of law for the court to decide.  McGreevy v. Stroup, 413 F.3d 359, 364 (3d Cir. 2005); Azzaro v. County of Allegheny, 110 F. 3d. 968, 975 (3d Cir. 1997).

The court applies a three-step burden shifting analysis for retaliation claims pursuant to the First Amendment under 42 U.S. §1983. Watters v. City of Philadelphia, 55 F. 3d. 886, 892 (3d Cir. 1995).  First, plaintiff must show that she engaged in speech on a matter of public concern protected by the First Amendment. Id.  An employee's speech involves a matter of public concern if it can "be fairly considered as relating to any matter of political, social or other concern to the community." Green v. Phila. Hous. Auth, 105 F.3d 882, 886 (3d Cir. 1997).  Second, the plaintiff must show that the Defendants responded with retaliation, and the protected activity was a substantial or motivating factor in the retaliatory action. Watters, 55 F. 3d. at 892.  Third, defendant may defeat the plaintiff's claim by demonstrating by a preponderance of the evidence that the same action would have been taken in the absence of the protected conduct.  Id.

In this case, the speech identified by Plaintiff is not protected speech under the First Amendment.  In addition to speaking on a matter of public concern, to recover, the plaintiff must show she was speaking as a private citizen, and not as an employee pursuant to her official duties. Bowser v. Bogdanovic, 2010 U.S. Dist. LEXIS 35080, * 12 (M.D. Pa. 2010); citing Garcetti v. Ceballos, 547 U.S. 410 (2006).  As the Supreme Court pointed out in Garcetti v.

Ceballos, "[w]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the United States Constitution does not insulate their communications from employer discipline." Id. at 421. The Garcetti Court defined speech made pursuant to a public employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." 547 U.S. at 421. Therefore, the Pickering analysis only applies when an employee speaks as a citizen. Borden v. Sch. Dist., 523 F.3d 153 , 169-170 (3d Cir. 2008); citing Garcetti, 547 U.S. at 21. "The First Amendment simply does not protect speech made pursuant to the employee's official duties." Borden, 523 F.3d at 169-170.

As noted by the Third Circuit in Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009), "[i]n the context of a First Amendment retaliation claim, the proper inquiry into what are an individual's official duties is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform. A claimant's speech might be considered part of her official duties if it relates to 'special knowledge' or 'experience' acquired through [her] job." Id. at 185. The Third Circuit has recently reaffirmed these principles, and highlighted circumstances where the speech at issue was based on special knowledge and experience acquired through the relevant public employment. Armbruster v. Cavanaugh, 2010 U.S. Dist. LEXIS 22288, * 10 (E.D.Pa. 2010); citing Cindrich v. Fisher, 341 Fed. Appx. 780, *5-6 (3d Cir. 2009) (holding speech "in the performance of [the employee's] case assignments, involv[ing] issues pertaining to those cases, and based on special knowledge and experience [the employee] acquired through her job" was "speech made pursuant to [the employee's] official duties").

In Armbruster v. Cavanaugh, 2010 U.S. Dist. LEXIS 22288 at *14-15, the Honorable Darnell Jones dismissed Plaintiff's First Amendment retaliation claim in response to Defendants' Motion to Dismiss. Plaintiff had been employed as a police officer with the Kutztown University Police Department for 17 years. Id. at *4. In April 2007, individuals demonstrated at an outdoor location on the Kutztown University campus. Id. During the demonstration, police officers and the Police Chief responded to the scene, along with the University President. The President and Chief asked Armbruster to "push" the protesting group off campus but Armbruster failed to comply with their requests. Armbruster objected to the order, stating that it violated the group's civil rights and the order to disperse was "wrong." Id. at *5. After Armbruster spoke his objections, he was relieved of the duties at the demonstration and told to leave the scene. Id. at *6. The Court agreed with Defendants that the plaintiff failed on the face of the Complaint to allege that he engaged in speech by a private citizen during the demonstration. Id. at *8-9. The Court found that the challenged activity fell squarely within Armbruster's police duties. Id. at *11-12. Armbruster was present at the demonstration because he was "on the job" and ordered to be there to perform official duties. Armbruster's speech was made to the superior who was directing Armbruster's official duties, not to any private citizen or in any public context related to the demonstrations. Id. Lastly, as the Armbruster's speech was made with the benefit of what he perceived to be knowledge and experience acquired through law enforcement. Id. at *12. The Court held:

> In short, Armbruster spoke while on duty, during his work hours at his place of work, in response to an order from a superior that he chose not to obey, based on knowledge acquired from his law enforcement employment experience. Stated differently, as pleaded, Armbruster's speech would not have occurred were he not actively performing his official duties. As pleaded, Armbruster was plainly complaining about his job function up the chain of command of his department, and case law dictates this speech fell within his official duties…Accordingly, as alleged in the Amended Complaint, Armbruster's speech falls outside the ambit

of First Amendment protection, and, as such, there is no viable basis for claiming that his speech is insulated from public employer discipline such that this claim may proceed. Accordingly, Plaintiff fails to state a claim as a matter of law.

Id. at * 14-15.

In Brown v. Montgomery County, 2010 U.S. Dist. LEXIS 19094 (E.D.Pa. 2010), the Honorable Juan R. Sanchez dismissed Plaintiff Shaun Brown's First Amendment retaliation claim on a Motion to Dismiss. Plaintiff Shaun Brown worked for Montgomery County as an Emergency Dispatch 911 Center supervisor. Id. at *2. In this role, Brown supervised the daily operations of the County's 911 response center and ensured dispatchers appropriately responded to 911 calls. Id. Plaintiff's Complaint alleged that his job duties "provided him intimate access to the operations and performance" of the County's Computer Aided Dispatch (CAD) system. Id. The Court noted that "a properly functioning CAD system is essential to the County's ability to respond efficiently to requests for emergency assistance." Id. Plaintiff asserted that in 2005, he began reporting defects in a new CAD system to his supervisor and the Director of Public Safety. Id. Brown allegedly "told his superiors he believed deficiencies in the new CAD system posed a risk to the safety and health of Montgomery County residents, in contravention of federal and state emergency management regulations." Id. Brown also alleged that his protected speech also included reports to Integraph, an independent contractor hired by the County to bring the new CAD system online, and reports to regulatory authorities, other government officials, and the news media. Id. at 2-3, 9.

The Court in Brown noted that "[a] public employee's statements made 'pursuant to [his] official duties' do not qualify as speech made in his capacity as a citizen, and thus are not protected speech." Id. at *7, citing Garcetti, 547 U.S. at 421. "The inquiry into whether speech was uttered pursuant to a plaintiff's official duties is a practical one, and it is not limited by the

plaintiff's formal job description." 2010 U.S. Dist. LEXIS 19094 at *7, citing Garcetti, 547 U.S. at 424-25. Relying on Foraker v. Chaffinch, 501 F.3d 231 (3d Cir. 2007), the Court dismissed Plaintiff Brown's First Amendment claim.[4]

The Court in Brown noted that Plaintiff's job was to ensure appropriate response to 911 calls, and the proper functioning of the CAD system was integral to that role. 2010 U.S. Dist. LEXIS 19094 at *10. Whether or not Brown's job description explicitly included making reports regarding CAD system functionality, his familiarity with and the regular use of the CAD system created a duty to report problems regarding the system. Id.

In addition, the Court held that statements to regulatory authorities, government officials, and the news media were also made pursuant to Brown's job duties because: "[a] claimant's speech might be considered part of his official duties if it relates to 'special knowledge' or 'experience' acquired through his job." Id. at *9-11; citing Gorum v. Sessoms, 561 F.3d 179,185 (3d Cir. 2009), Kougher v. Burd, 274 Fed. Appx. 197 (3d Cir. 2008)[5]. The Court held that Brown's statements to individuals and entities unaffiliated with the County arose from experience acquired at his job as an Emergency Dispatch Center supervisor and the content of

---

[4] In Foraker, 501 F.3d 231 (3d Cir. 2007), two former Delaware State Troopers and State Police Firearms Training Unit Instructors asserted their free speech rights were violated when they were disciplined after reporting health and safety concerns related to a firing range to their superiors and to the State Auditor. Id. at 233-34. The plaintiffs argued these statements were protected speech because they "exposed serious health and safety concerns and exposed government incompetence and wrongdoing," and such reports were not made pursuant to their official duties because "speaking out about health and safety problems at the firing range was not part of their job function." Id. at 238. The court held that the plaintiffs' statements were made pursuant to their official duties because an adequately equipped firing range was needed to do their jobs and their "daily interaction with the equipment" created the responsibility to inform supervisors of any problems. Id. at 240 & n.6. Even if the plaintiff's reports of safety concerns "exceeded the expectations of his formal job description," such reports were still within the scope of his duties because his duties encompassed regular use of the allegedly faulty equipment. Id. at 242.

[5] In Kougher, 274 Fed. Appx. 197 (3d Cir. 2008), a state dog warden brought a First Amendment retaliation claim after he was disciplined for speaking to a newspaper about an ongoing investigation of a certain dog kennel. Id. at 199. The district court granted the supervising employees' motion for summary judgment, holding the plaintiff's reports to media were unprotected speech because "his expressions fall clearly within the scope of his professional duties as state dog warden." Id. at 200. The Third Circuit affirmed the lower court's decision focusing on the content of the plaintiff's speech and noting the plaintiff's speech was "entirely job-related." Id.

such statements was entirely job-related and, therefore, made pursuant to his official duties and not protected by the First Amendment. 2010 U.S. Dist. LEXIS 19094 at *10-11.

In Diesinger v. W. Pikeland Twp., 2009 U.S. Dist. LEXIS 79026 (E.D. Pa. 2009), the Honorable Lawrence Stengel dismissed plaintiff's First Amendment retaliation claim on a Motion to Dismiss. Plaintiff was the Township Manager for West Pikeland Township. Id. at *2. Plaintiff alleged that Plaintiff was fired for statements she made during public meetings of the Board of Supervisors. These statements were regarding purported false statements by the Finance Review Committee about available funding to build a soccer field and Plaintiff stated her intention to provide the township with an accurate financial report to demonstrate that there was sufficient funding. Id. at *2-3. The Court dismissed the First Amendment retaliation claim holding that the speech was made pursuant to the Plaintiff's official duties. The Court noted that:

> The complaint unequivocally establishes that Diesinger, as Township Manager, had 'a duty and responsibility to oversee the . . . Township's finances and to ensure that the . . . Township implemented the decision to build [the soccer] field.' On two occasions, Diesinger spoke up to defend the field proposal and to state that there were sufficient funds in the township's budget to proceed with construction. Given these facts, it is not clear how Diesinger can claim these statements were not made in her official capacity: her duties included ensuring the township implemented its decision to build the fields, and when potentially harmful information was presented to the Board, she spoke to assure the Board that the project could and should be completed within the current budget.

Id. at *7.

In Maule v. Susquehanna Reg'l Police Comm'n, 2007 U.S. Dist. LEXIS 73065 (E.D.Pa. 2009), the Honorable James Knoll Gardner dismissed Plaintiff's First Amendment retaliation claim on a motion to dismiss. In an Amended Complaint, plaintiff alleged that he was fired as Police Chief in retaliation for reporting an incident between one of his officers and a councilman for Marietta Borough. Id. at *39-40. The councilman allegedly accosted the uniformed and on-duty officer of the Susquehanna Regional Police Department with profane language and

threatening gestures. Id. at *40. Plaintiff referred the matter to the Pennsylvania State Police for

an objective investigation. Id. Plaintiff averred in the Amended Complaint that "Defendants

retaliated against Plaintiff for speaking up and performing his sworn obligations and oath as

Chief of Police." Id. Defendants sought dismissal, asserting that Plaintiff's speech was pursuant

to his official duties. Id. Although Plaintiff asserted that the issue of what constitutes plaintiff's

official duties was an issue of fact for discovery and trial, the Court disagreed and dismissed the

First Amendment retaliation claim. Id. The Court stated that:

> [T]he Amended Complaint makes it clear that plaintiff considered his referral of
> defendant Wiggins to the Pennsylvania State Police to be a part of his official
> duties. Clearly, plaintiff considered that an investigation by his own department
> (of an altercation between one of the department's officers and a councilman for
> one of the municipalities which the police department served) would create a
> conflict of interest. Plaintiff correctly avers that his "sworn obligations and oath
> as Chief of Police" would require that such a matter be referred to another law
> enforcement entity for investigation and prosecution. Therefore, the speech
> which plaintiff contends is protected (the referral of the case to the State Police)
> is within his official duties. Thus, the referral does not qualify as protected speech
> because plaintiff was not speaking as a citizen when he made this referral, and
> because, as a matter of law, the referral is not protected speech. Accordingly, I
> grant defendants' joint motion to dismiss plaintiff's First Amendment retaliation
> claim.

> Id. at 40-41.

In the instant matter, it is clear that Plaintiff Lebowitz's purported speech was made

pursuant to her official job duties as a school employee and social worker. Plaintiff's job

description lists her duties, in part, to include: 1) reporting abuse/neglect to supervisors and

appropriate agencies as directed, assisting the Dean of Students and Special Education

Coordinator with grouping and placement of students, 2) including necessary evaluations,

collaboration with CEO, Dean, Teachers and parents to discuss behavioral and school issues and

determine a plan of action; 3) identifying students who need specialized programs and services,

recommending and providing resources to parents and guardians; and 4) regular meetings with

Special Education Coordinator, Teachers and Therapists regarding special needs children and providing observations/ progress monitoring results, best practices for behavioral support and modification. (See, Exhibit A). Plaintiff alleges in her Complaint that she accessed the IEPs as part of her job duties and, that as a social worker in the school, she was a mandated reporter under the CPSL and therefore was required to report suspected abuse of students as part of her job duties. (Complaint ¶16, 57-58; see also, Exhibit A).

As noted above, the Complaint asserts that Plaintiff served as a member of the students' IEP teams. Through this process and the knowledge gained regarding IDEA and its requirements, Plaintiff believed that the Defendants were not in compliance with the change of place notice requirements. Therefore, it is clear that as pled in the Complaint, Plaintiff was not speaking as a citizen when she allegedly complained internally about the change of place notices. Rather, she alleges that she was speaking as a school employee as part of her duties and with knowledge of the statutory requirements of the IDEA gained in her role as an employee and social worker. Like the Plaintiff in <u>Brown</u>, Plaintiff had access to the subject of her complaint (the IEPs for Lebowitz and the CAD system for Brown) and specialized knowledge of requirements under the IDEA only because of her official employment duties as a social worker from her participation on the IEP teams. In this case, the Plaintiff felt there was a deficiency in the IEP notices causing her to submit a report internally up the chain of command to the Dean of Students, with no external reports or public statements. (Complaint, ¶18). She was clearly speaking as an employee, rather than a citizen.

The second report, which Plaintiff alleges served as the basis for her termination, was regarding suspected abuse by employee B.R.. Plaintiff asserts that as a "school employee as defined under the CPSL, acting in the course and scope of her duties as an employee of

Defendants," she was a mandated reporter under the CPSL. (Complaint, ¶57-58). Similar to Maule where the Court found that the underlying incident of allegedly inappropriate and possibly unlawful conduct was not protected speech as the plaintiff's "sworn obligations and oath as Chief of Police" required that he refer the underlying matter for investigation, the Plaintiff's Complaint here makes it clear that she believed her duties as a school employee mandated that she report the incident involving B.R.., which was likewise an incident of allegedly inappropriate and possibly unlawful conduct. Therefore, the report does not qualify as protected speech because plaintiff was not speaking as a citizen when she allegedly made this report.

Similar to the reasoning in Armbruster, Plaintiff observed B.R.'s conduct while she was present "on the job" at the school and required to be there to perform her official duties. Plaintiff's speech was made to her superior, who was directing her official duties, and not to any private citizen or in any public context. As such, Plaintiff's First Amendment claim must be dismissed with prejudice. Any amendment to the Complaint would be futile as it is clear by Plaintiff's own admissions in the Complaint that she was acting as an employee, rather than a citizen.

### 2.    Garcetti and Speech Relating to Teaching and Scholarship

The majority opinion in Garcetti raised an issue regarding the applicability of the "official duties" rule in the context of an academic setting, responding to the dissenting opinion by Justice Souter. 547 U.S. at 425. The majority in Garcetti stated that:

> Justice Souter suggests today's decision may have important ramifications for academic freedom, at least as a constitutional value. There is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by this Court's customary employee-speech jurisprudence. We need not, and for that reason do not, decide whether the analysis we conduct today would apply in the same manner to a case involving speech related to scholarship or teaching.

Id.

In his dissent, Justice Souter, with Justices Stevens and Ginsberg joining, was troubled by the

majority opinion because he felt it may be broad enough "to imperil First Amendment protection

of academic freedom in public colleges and universities, whose teachers necessarily speak and

write 'pursuant to...official duties.'" Id. at 438 (J. Souter dissenting). Justice Souter noted that:

> This ostensible domain beyond the pale of the First Amendment is
> spacious enough to include even the teaching of a public university
> professor, and I have to hope that today's majority does not mean to
> imperil First Amendment protection of academic freedom in public
> colleges and universities, whose teachers necessarily speak and write
> "pursuant to . . . official duties." See Grutter v. Bollinger, 539 U.S. 306,
> 329, 123 S. Ct. 2325, 156 L. Ed. 2d 304 (2003)("We have long recognized
> that, given the important purpose of public education and the expansive
> freedoms of speech and thought associated with the university
> environment, universities occupy a special niche in our constitutional
> tradition"); Keyishian v. Board of Regents of Univ. of State of N. Y., 385
> U.S. 589, 603 (1967)("Our Nation is deeply committed to safeguarding
> academic freedom, which is of transcendent value to all of us and not
> merely to the teachers concerned. That freedom is therefore a special
> concern of the First Amendment, which does not tolerate laws that cast a
> pall of orthodoxy over the classroom. 'The vigilant protection of
> constitutional freedoms is nowhere more vital than in the community of
> American schools'" (quoting Shelton v. Tucker, 364 U.S. 479, 487, 81 S.
> Ct. 247, 5 L. Ed. 2d 231 (1960))); Sweezy v. New Hampshire, 354 U.S.
> 234, 250 (1957)(a governmental enquiry into the contents of a scholar's
> lectures at a state university "unquestionably was an invasion of [his]
> liberties in the areas of academic freedom and political expression--areas
> in which government should be extremely reticent to tread").

Garcetti, 547 U.S. at 438-439 (J. Souter, dissenting)(emphasis added). In this dissent, Justice

Souter raises concern about speech by teachers or professors and the need for freedom of thought

and expression in schools and the classroom. Id.

The concerns addressed in Justice Souter's dissent are not applicable to the facts pled by

Plaintiff Lebowitz in her Complaint as the dissent clearly contemplated academic freedom and

political expression of professors or teachers, not a social worker. Plaintiff was employed as a

social worker, not a teacher or professor. Here, the Plaintiff was not complaining that her academic or scholarly speech was restricted by Defendants. The purported speech by Plaintiff was not regarding expression relating to the instruction of students or a similar topic. Plaintiff merely alleges that notices required under the IDEA were not sent in a timely manner. She also complained of alleged abusive conduct by the Special Education Coordinator, which Plaintiff perceived as a possible violation of the CPSL. This speech does not implicate freedom of expression in teaching, academic freedom or scholarship. Simply because Plaintiff worked at a school is insufficient to remove this case from the "official duties" test laid out by Garcetti, particularly in this case where it is so clear that Plaintiff spoke as an employee pursuant to her duties, rather than as a citizen.

In Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009), the Third Circuit addressed the discussion in Garcetti regarding the applicability of the official duty test in an academic setting. Gorum was a tenured professor at Delaware State University (DSU") from 1989 until his termination in 2005. As a DSU professor, Gorum sat on various administrative committees, including the Faculty Senate and Student Affairs Committee, and served as an advisor to the DSU chapter of the Alpha Phi Alpha fraternity. Id. at 182. Gorum alleged that Defendant Sessoms recommended terminating his employment because of views he expressed in three instances: 1) for his objection to the selection of Sessoms as University President in 2003 before the Faculty Senate; 2) for acting as an advisor to DaShaun Morris, an NCAA All-American Division I-AA football player who violated DSU's zero-tolerance policy against weapons possession in 2002, helping Morris draft an appeal letter, serving as an advisor at Morris's disciplinary hearing, using his position as department chair to intercede on Morris's behalf with the then-President of the University; and 3) Gorum's rescission of an invitation to Sessoms to

speak at the 2004 Alpha Phi Alpha Martin Luther King, Jr. Prayer Breakfast. The Court noted that:

> In determining that Gorum did not speak as a citizen when engaging in his claimed protected activities, we are aware that the Supreme Court did not answer in Garcetti whether the "official duty" analysis "would apply in the same manner to a case involving speech related to scholarship or teaching." 547 U.S. at 425. We recognize as well that "[t]here is some argument that expression related to academic scholarship or classroom instruction implicates additional constitutional interests that are not fully accounted for by . . . customary employee-speech jurisprudence." Id. But here we apply the official duty test because Gorum's actions so clearly were not "speech related to scholarship or teaching," and because we believe that such a determination here does not "imperil First Amendment protection of academic freedom in public colleges and universities." Id. at 438 (Souter, J. dissenting).

Gorum, 561 F.3d at 186.

The Third Circuit in Gorum, as set forth above, identified the subject matter as "academic scholarship or classroom instruction." Id. The court noted that the official duty test in Garcetti may not apply "to a public instructor's speech 'related to scholarship or teaching.'" Id. Although the Plaintiff's speech arose in a school setting, the Court in Gorum found that the speech at hand did not relate to scholarship or teaching, and the Court applied the Garcetti "official duty" test, finding that the speech was not protected. As in Gorum, the "official duty" test applies because the Plaintiff's actions so clearly were not "speech related to scholarship or teaching" and such a determination does not "imperil First Amendment protection of academic freedom in public colleges and universities." Id at 186.

Also, in Blevis v. Lyndhurst Bd. of Educ., 2009 U.S. Dist. LEXIS 89908 (D. N.J. 2009)(Unpub.), the Court applied the Garcetti official duties test in a school setting. Plaintiff John Blevis had been a teacher in the Science Department at Lyndhurst High School since 1986. He filed a First Amendment retaliation claim asserting that the Board and others retaliated against

him for filing grievances, alerting school official Richard Lees to safety and cleanliness concerns, and reporting a request that he change a student's grade. Id. at *1. The District Court held that:

> when Blevis communicated with his superiors at Lyndhurst High School regarding safety in the science labs, [a] boys' room incident, academic standards with respect to special education students, inconsistencies in other academic policies, or insufficient chaperoning on field trips, he made communications within his job function, and was not speaking as a citizen.

Id. at 14-15; citing Garcetti, 547 U.S. at 421-422. The Court reviewed several policies of the Board stating the duties of teachers regarding education standards and student safety and found that "[a]ll three of the...policies...contemplate teacher input to the administration on their respective issues. Although this inquiry is a mixed question of fact and law, this Court does not have evidence in the record before it from which a reasonable fact-finder could conclude that Gorum's concerns were communicated as a citizen and not as an employee." 2009 U.S. Dist. LEXIS 89908 at 14-15.

In Ryan v. Shawnee Mission Unified School District, 437 F. Supp. 2d 1233 (D. KS 2006), the court addressed similar facts as those alleged by Plaintiff Hilary Lebowitz. The District Court in Ryan and dismissed Plaintiff's First Amendment claim which was directly related to IEPs, even though the speech arose in a school setting. Plaintiff Juanita Ryan was a physical therapist employed by the Shawnee Mission Unified School District. Her Complaint asserted claims against the school district and her former supervisor for retaliation and wrongful termination in violation of the First Amendment after Ms. Ryan complained about equipment needs for students, the appropriateness of providing services without doctors' orders, scheduling of evaluations for students, and other scheduling difficulties. Id. at 1235, 1249-1251.

In Ryan, the court noted that in determining whether a public employer has infringed an employee's First Amendment free-speech rights, the court should apply the test articulated in

Pickering v. Board of Education, 391 U.S. 563 (1968), and Connick v. Myers, 461 U.S. 138, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983). See 437 F.Supp. at 1246-1247. The Ryan court was deciding Defendant's motion for summary judgment, and while the case was pending, the U.S. Supreme Court decided Garcetti. 437 F. Supp. at 1247. The court noted that under Garcetti, the Supreme Court instructs courts to ask and answer another question as part of the Connick/Pickering test -- that is, whether the employee made the statement as a citizen or pursuant to his or her official duties. Id. The Ryan Court noted that Garcetti significantly changed the landscape of the case under the First Amendment. Id.

The court in Ryan examined the alleged protected speech and found that the speech was pursuant to Plaintiff's official duties or otherwise not a matter of public concern. Id. at 1249-1251. The court found that:

> [Plaintiff] was carrying out her duties to plan for the provision of PT services to students on her caseload. All of the...speech 'owes its existence to' plaintiff's professional responsibilities as a PT for the school district. Like the employee Ceballos in Garcetti, plaintiff made these statements as she went about conducting her daily professional activities, the scope of which is uncontroverted. As such, Garcetti forecloses the possibility that these statements can be considered protected speech.

Id. at 1251.

Similarly, here, the Plaintiff made the two alleged statements as she went about conducting her daily professional activities. As such, the Garcetti official duties test is applicable to Plaintiff's alleged protected speech and does not implicate "academic freedom" issues referred to in the Garcetti dissent.

### 3. The Pickering Test- Plaintiff Did Not Speak as a Citizen on a Matter of Public Concern

Even if this Court should decide that the Garcetti "official duties" test does not apply in the context of this case, the First Amendment claim should still be dismissed as Plaintiff did not

speak as a citizen or on a matter of public concern. In <u>Gorum v. Sessoms</u>, the court noted that where the official duty test in <u>Garcetti</u> does not apply, courts apply the traditional First Amendment protected speech analysis in <u>Pickering v. Board of Education</u>, 391 U.S. 563, 569 (1968). 561 F.3d at 186, n. 6.

As noted above, this requires a two step analysis: 1) to determine whether the employee's speech is a matter of public concern, and; 2) balancing between the interests of the employee as a citizen in commenting on matters of public concern and the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees. <u>Id.</u>, citing <u>Pickering</u>, 391 U.S. at 568. As noted above, both elements are questions of law to be decided by the Court.

Plaintiff did not speak as a citizen with her internal complaints regarding the change of place notices and the incident involving B.R.. Speech is protected only when a plaintiff was speaking as a citizen on a matter of public concern that "can be fairly considered as relating to any matter of political, social or other concern to the community." <u>Brennan v. Norton</u>, 350 F.3d 399, 412 (3d Cir. 2003) (quoting <u>Baldassare v. New Jersey</u>, 250 F.3d 188, 195 (3d Cir. 2001)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." <u>Connick</u>, 461 U.S. at 147-148. Courts have stated that speech is on a matter of public concern if it "relate[s] to broad social or policy issues," including expressing the desirability of assassinating the President or complaining about racial discrimination. <u>Borden v. Sch. Dist.</u>, 523 F.3d 153 , 169-170 (3d Cir. 2008)(citations omitted).

In <u>Connick v. Myers</u>, 461 U.S. at 148 & n. 8, the Supreme Court found that where the employee's efforts did not focus on relaying the information to the public, it could not be speech

on a matter of public concern. In <u>Gorum</u>, the Court found that Plaintiff's speech at a hearing on behalf of a student was not a matter of public concern because it related to the personal grievance of one student. In addition, there was no evidence that Gorum even made a public statement. The Court noted that "assuming that Gorum even raised matters of public concern in assisting [the student], '[w]e cannot 'cherry pick' something that may impact the public while ignoring the manner and context in which that statement was made or that public concern expressed." 561 F.3d at 187; quoting <u>Miller v. Clinton County</u>, 544 F.3d 542, 550 (3d Cir. 2008). The inquiry regarding whether speech is on a matter of public concern "must also consider the form and circumstance of the speech in question." <u>Id.</u>

Here, the allegations made by Plaintiff do not involve a matter of public concern as it has been defined in the case law.[6] More specifically, the Plaintiff was not speaking as a citizen on a matter of public concern when she made reports to school officials. Her Complaint explicitly states that she participated as a member of students' IEP teams and "in performing her duties," Lebowitz learned that Tacony had not completed the 30-day change of place notices and she reported this internally to the Dean of Students. (Complaint, ¶ 16-17). She made no external reports or public statements and did not engage in any other course of conduct that would

---

[6] In <u>Pickering v. Bd. Of Educ of Twp. H.S.</u>, 391 U.S. 563 (1968), the Court held that the First Amendment prohibited the dismissal of a high school teacher for openly criticizing the Board of Education, via a letter to the local newspaper, on its allocation of school funds between athletics and education and its methods of informing taxpayers about the need for additional revenue. Pickering's subject was "a matter of legitimate public concern" upon which "free and open debate is vital to informed decision making by the electorate." <u>Connick v. Myers</u>, 461 U.S. 138 (1982); quoting <u>Pickering</u>, 391 U.S. at 571-572. As noted in <u>Connick</u>, cases following Pickering also involved safeguarding speech on matters of public concern. In <u>Perry v. Sindermann</u>, 408 U.S. 593 (1972), the case arose from the failure to rehire a teacher in the state college system who had testified before committees of the Texas Legislature and had become involved in public disagreement over whether the college should be elevated to 4-year status. In <u>Mt. Healthy City Board of Ed. v. Doyle</u>, 429 U.S. 274 (1977), a public school teacher was not rehired because he allegedly had relayed to a radio station the substance of a memorandum relating to teacher dress and appearance that the school principal had circulated to various teachers. In <u>Givhan v. Western Line Consolidated School District</u>, 439 U.S. 410 (1979), the Supreme Court held that First Amendment protection applies when a public employee arranges to communicate privately rather than publicly but the subject matter of Plaintiff's statements were concerning the School District's allegedly racially discriminatory policies. <u>Connick</u>, 461 U.S. at 145.

indicate she was speaking as a citizen, rather than as an employee. Likewise, with respect to the report regarding B.R., Plaintiff asserts that she was a school employee under the CPSL and, as a mandated reporter, she made an internal report to the Dean of Students about the incident. (Complaint, ¶ 57-58). She made no external reports or engaged in any other course of conduct that would indicate she was speaking as a citizen, rather than as an employee, when reporting the incident involving B.R.. Clearly, such internal reports made pursuant to her professional duties and submitted strictly within the boundaries of her employment are not a matter of public concern.

As such, even if the Court must apply the <u>Pickering</u> test, the facts in the Complaint warrant dismissal of Plaintiff's First Amendment claims.

**B.      Plaintiff's Allegations Of Conspiracy Fail Under Both Pennsylvania Law and  42 U.S.C. §1983.**

**1.      Plaintiff Fails To Allege Facts In Support of the Requisite Intent of Malice to Further Her Civil Conspiracy Claim.**

In Pennsylvania, the law is well established that the elements of civil conspiracy are "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and, (3) actual legal damage." <u>Levin v. Upper Makefield Township</u>, 90 Fed. Appx. 653, 667 (3d. Cir. 2004); see also, <u>Smith v. Wagner</u>, 588 A.2d. 1308, 1311-1312 (Pa. Super. 1991). An essential element for proof of conspiracy is malice or an intent to injure. <u>Strickland v. University of Scranton</u>, 700 A.2d 979, 987 (Pa. Super. Ct. 1997). Pennsylvania courts have found that this element of malice *will only be found* when the *sole* purpose of the conspiracy is to cause harm to the party that was injured. <u>Thompson Coal Co. v. Pike Coal Co.</u>, 412 A.2d 466, 472 (Pa. 1979) (emphasis added). Where the facts alleged show that a person

acted to advance his own business interests, and not solely to injure the party injured, those facts negate any alleged intent to injure. Id.; see also, Becker v. Chicago title Insurance Co., 2004 U.S. Dist. LEXIS 1988, 39-40 (E.D. Pa. 1988).

In this case, not only is Plaintiff Lebowitz's complaint devoid of sufficient facts in furtherance of the first three elements of a conspiracy claim, but the Complaint fails to allege any facts in furtherance of a finding that the Defendants acted with malice or an intent to harm the Plaintiff. In fact, according to Plaintiff's own allegations, the Defendants "acted in concert with and reached an agreement with each other to terminate Lebowtiz employment, in furtherance of Defendant's policy, practice and/or custom of covering up acts of wrongdoing, such as above-described ...to avoid potential legal or other consequences." (Complaint ¶ 29) (emphasis added). By Plaintiff's own allegations, the Defendants did not act with the sole intention of injuring the Plaintiff, rather, the Defendants were acting to protect their own business interests. Thus, the requisite element of malice is negated by plaintiff's own allegations.

2.    **Plaintiff's Civil Conspiracy Claim Is Duplicative of Her Whistleblower Claim And Should Be Dismissed as Redundant.**

Under Pennsylvania law, a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability. In re: Orthopedic Bone Screw Products Liability Litigation, 193 F.3d 781, 788-792 (3d. Cir. 1999). While the Defendants submit that the facts alleged by the Plaintiff in her Complaint are insufficient to maintain a conspiracy claim, it appears that Plaintiff is alleging that the "independent wrong" underlying her conspiracy claim is the alleged Whistleblower Law violation. (Complaint ¶62). However, in light of the fact that Plaintiff has alleged the Whistleblower Law violation against all defendants without limitation, her conspiracy claim which is likewise alleged against each defendant should be dismissed as redundant.

A claim of conspiracy is a means of attaching vicarious liability for the underlying wrong, in this case the alleged retaliation in violation of the Whistleblower Act. See, Boyanowski v. Capital Area Intermediate Unit, 215 F. 3d 396, 407 (3d. Cir. 2000); see also, The Knit Wit v. Knitting Fever Inc., 2009 U.S. Dist. LEXIS 98217, *57-59 (E.D.Pa. 2009). Plaintiff has alleged that each of the Defendants violated the Whistleblower Law. Thus, in effect, the Plaintiff is seeking to recover twice against all defendants for the alleged violation of the Whistleblower Act, once directly under the Act and again under a theory of vicarious liability pursuant to a civil conspiracy claim. As such, the Plaintiff's civil conspiracy claim should be dismissed as repetitive of her Whistleblower Law violation.

**3. Plaintiff's Section 1983 Conspiracy Claim Fails Because There Has Been No Deprivation of a Federally Protected Right Alleged.**

In order to prevail under a Section 1983 conspiracy claim, the plaintiff must prove that persons acting under color of state law conspired to deprive her of a federally protected right, as it has been clearly established that "Section 1983 does not create a cause of action per se for a conspiracy to deprive one of a constitutional right. Without actual deprivation, there can be no liability under Section 1983." Banks v. Gallagher, 686 F. Supp. 2d. 499 (quoting Garner v. Twp. of Wrightstown, 819 F. Supp. 435, 445 n.7 (E.D. Pa. 1993)).

In this case, the Plaintiff has failed to identify any such federally protected right as it has been established that the act of making a report to a public employer while acting in the course and scope of one's public employment, is not an activity that falls under the umbrella of the First Amendment's protection. Rather, the Complaint makes the sweeping statement that she "was engaged in protected activity under the First Amendment" and references the two reports she made regarding the alleged IEP change of place notice violations and the alleged observed violation of the CPSL which she included in her First Amendment, Free Speech violation cause

of action. (Complaint, ¶41-42). However, for all of the reasons set forth in Subsection A above, it is clear that Plaintiff was not engaged in any protected speech when submitting either report she has identified. Therefore, absent the underlying deprivation of a protected civil right, there can be no Section 1983 conspiracy, and Plaintiff's claim must be dismissed.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: s/John P. Gonzales
JOHN P. GONZALES, ESQUIRE
ID# PA71265
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8264 Fax (610) 354-8299
Email: jpgonzales@mdwcg.com
Attorney for Defendants, TACS and Stacey L.
Cruise

WEBER GALLAGHER SIMPSON
STAPLETON FIRES & NEWBY LLP

BY: /s/ Tracy A. Walsh
TRACY A. WALSH, ESQUIRE
ID# 62481
2000 Market Street
13th Floor
Philadelphia, PA 19103
(215) 972-7900
Attorneys for Defendants,
Santilli & Thompson, LLC and Gerald L. Santilli

DATE: July 19, 2010

Exhibit "A"

# Job Description for School Social Worker / Counselor

**IMMEDIATE SUPERVISOR:** Dean of Students

**TERM:** 10 month employment, salaried

**REQUIREMENTS:** Masters Degree in Social Work, and State license in Social Work

**GENERAL DESCRIPTION:** Monitors and supports the emotional and mental well being of students and families

**ESSENTIAL FUNCTIONS:** The employee is responsible for the following, includes but not limited to:

- **Acts as primary responder to crisis situations**

  * Participant of crisis management team

  *Report abuse/neglect to supervisors and appropriate agencies as directed/ Liaison between school, family and agencies

  * Immediate counseling and/or restraint of student(s) in emotional crisis

  *Accompany student(s) to mental health facility

- **Counsel individual students and groups regarding: self awareness, family issues, child abuse/neglect, peer pressure and behavioral problems**

  *Weekly groups with students focused on (self esteem, depression, bullying, problem solving, anger management)

  *Maintain a caseload of weekly individual counseling cases

- **Assists Dean of Students and Spec. Ed Coordinator with grouping and placement of students, including necessary evaluations**

  * Observations and Progress Monitoring/Reporting for students identified by CSP team to have behavioral challenges

- **Collaborates with CEO, Dean, Teachers and parents to discuss behavioral and school issues and determine a plan of action**

*Issues relating to: Family, mental health, parent communication, etc

*Home visits for: truancy issues, lack of parental response, immobile parents, inability to contact parents, etc

- **Identifies students who need specialized programs and services, recommends and provides resources to parents/guardians**

    *Provide verbal and written information regarding: Medicaid, counseling services, mental health support, shelter, subsidies, hotlines, etc.

- **Assists with standardized testing, student/ parent orientations and coordination of home bound instruction**

    * Testing Coordinator for State, Local and In-house school-wide testing

- **Regularly meets with Special Ed Coordinator, Teachers and Therapists regarding special needs children**

    *Provide observations/progress monitoring results, best practices for behavioral support and modification

- **Plans and facilitates special events** (school fair, career day, agency speakers, parenting classes, etc.)
- **Conducts classroom guidance lessons**

    * Weekly guidance lessons based on: CSC, current school wide, community or worldwide events and concerns

    *Lessons must be turned in and meet PA academic standards

- **Acts as a facilitator at C.S.P. meetings**

    *Coordinates meetings with staff and parents

    *Keeps, updates and distributes weekly C.S.P. records and minutes

- **Provides support for teachers in working with the whole student**

    *Gives suggestions, ideas and supports to teachers and staff to address concerns pertaining to student academic and social welfare

- **Plans professional development to further the ideals of caring school community**

## KNOWLEDGE, SKILLS AND/OR ABILTIES REQUIRED:

- Ability to physically perform the duties and to work in the environmental conditions required of this position and performs all other duties as assigned

**MARSHALL, DENNEHEY, WARNER,**
**COLEMAN & GOGGIN**
**BY:** Joseph J. Santarone, Jr., Esquire
    ID# 45723
**BY:** John P. Gonzales, Esquire
    ID# 71265
620 Freedom Business Center, Suite 300
King of Prussia, PA 19406
(610) 354-8282

**WEBER GALLAGHER SIMPSON**
**STAPLETON FIRES & NEWBY LLP**
**By:** Tracy A. Walsh, Esquire
    ID# 62481
**By:** Jamie Panzer, Esquire
    ID# 203216
2000 Market Street
13th Floor
Philadelphia, PA 19103
(215) 972-7900

---

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ | : Civil Action No: 10-00233 |
| | : |
| v. | : |
| | : |
| TACONY ACADEMY CHARTER SCHOOL, | : |
| SANTILLI & THOMPSON, LLC, GERALD L. | : |
| SANTILLI AND STACEY L. CRUISE | : |

## CERTIFICATE OF SERVICE

    I, JAMIE L. PANZER, ESQUIRE, do hereby certify that a true and correct copy of

Defendants' Supplemental Joint Brief in Support of Their Motions to Dismiss Plaintiff's

Complaint was electronically filed with the Court on July 19, 2010 and is available for viewing

and downloading from the ECF System. All counsel of record was served via electronic notification.

BY: <u>/s/ Jamie L. Panzer</u>
JAMIE L. PANZER, ESQUIRE
  ID# 203216
2000 Market Street
13th Floor
Philadelphia, PA  19103
(215) 972-7900
Attorneys for Defendants,
Santilli & Thompson, LLC and Gerald L.
Santilli

DATE:  July 19, 2010