IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HILLARY LEBOWITZ, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION NO. 10-00233 |
| TACONY ACADEMY CHARTER SCHOOL, et al., | : |
| Defendants | : |

PLAINTIFF'S SUPPLENTAL BRIEF IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

**I. INTRODUCTION**

At oral argument on July 8, 2010 the Court permitted the parties to submit supplemental briefs addressing several of the issues raised. Plaintiff, Hillary Lebowitz ("Lebowitz"), submits this brief to more fully articulate her opposition to defendants' Rule 12(b)(6) motions to dismiss her complaint. While it continues to be Lebowitz' position that defendants' Rule 12 (b)(6) motions are without merit and should be denied, should the Court grant them in whole or in part, Lebowitz submits that the dismissal should be without prejudice and leave granted to file an amended complaint.

**II. DISCUSSION**

    **A. Lebowitz' Complaint Satisfies The *Twombly* "Plausibility" Test**

The Court is aware from its review of the complaint that Lebowitz avers she was fired from her position with the Tacony Academy Charter School ("Tacony") because she reported to her supervisor physical abuse she observed of a student by a

1

professional staff member.[1] After reporting the abuse, Lebowitz was fired, under the guise that she "wasn't a good fit."

At oral argument, counsel for defendants posited unconvincingly that Lebowitz' complaint failed to meet the standard set out by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Respectfully, that is not the case. Lebowitz has pled sufficient facts in her complaint to conclude it is "plausible" that she is entitled to relief under the claims asserted and that discovery will reveal record evidence to prove the legal elements of those claims. As the *Twombly* Court has held, a complaint does not necessarily need detailed factual allegations, it is required only to raise a right to relief above the speculative level, on the assumption that the allegations in the complaint are true. *Id.* at 1964-65 (citations omitted). In making this determination, a court must accept all well-pleaded facts in the complaint as true and view the allegations in a light most favorable to the plaintiff. *Maio v. Aetna, Inc. et al.*, 221 F.3d 472, 482 (3d Cir. 2000). In this case, accepting as true that Lebowitz was fired in retaliation for reporting student abuse and that the reason given her for her termination was false, the "plausibility" standard has been met. Even as to her conspiracy claim, the averment that defendants used the euphemistic description of "not a good fit" as the basis for firing Lebowitz, plausibly demonstrates the pretextural nature of their reasons because they understood that the real reasons were unlawful.

---

[1] Lebowitz concedes, for purposes of defendants' motions, that arguably her complaints about the timeliness of defendants' submission of required Individual Education Plan ("IEP") notices may have been made as part of her job responsibilities as the school social worker, and thus may not be protectable speech. On the other hand, arguably her complaints may have been made as a private citizen independently from any job responsibility. For purposes of this Supplemental Brief, Lebowitz will address only the report of child abuse, as that issue alone is sufficient to withstand dismissal.

Lebowitz submits that the *Twombly* test is a functional one, that is, does the complaint serve its intended purpose of notifying other parties and the court of the nature of the claim being asserted and, in appropriate circumstances, permit frivolous or insubstantial claims to be dismissed where they make claims for relief without showing the basis for such relief. That Lebowitz was fired for reporting a reasonable belief that a student has been abused by a staff member clearly advises the parties and the court of the nature of the claims being asserted and is far from frivolous or insubstantial.

In a complex matter, such as, for example, a nationwide price-fixing conspiracy under the Sherman Act, the "plausibility" test may require a highly detailed recitation of the underlying facts, the contractual arrangements and the operative facts to meet that standard. On the other hand, in a case such as this one, where the relationship between cause and effect is more readily apparent and understandable on its face, *i.e.* Lebowitz claims she was fired because she complained about what was occurring at the school, the *Twombly* test does not require more factual specificity than already exists in the complaint.

### B. Lebowitz' Speech is Protected Under the First Amendment

Defendants contend that Lebowitz' First Amendment retaliation claim should be dismissed because Lebowitz' report of child abuse is not speech protected under the First Amendment because it was made as part of her official duties, not as a citizen.

*Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) governs this discussion. Under *Garcetti*, speech is protected under the First

Amendment when: (1) it is spoken as a citizen; (2) it involves a matter of public concern; and (3) there is no adequate justification for the speaker being treated differently from any other member of the general public as a result of the speech. *Id.* 547 U.S. at 418. [2] The issue addressed here is whether Lebowitz spoke as a citizen, in her official capacity as a staff member of Tacony, or both.

In *Garcetti, supra,* a Deputy District Attorney, Richard Ceballos, objected to misstatements made in an affidavit for a search warrant. Ceballos brought his concerns to his supervisors in a written memorandum. When they decided to proceed with the case anyway, he spoke to the defense attorneys in the case, and defense counsel subpoenaed him to testify. In response, his supervisors in the District Attorney's office retaliated against him, denying him a promotion and transferring him to a distant location.

The United States Supreme Court in *Garcetti* held that Ceballos had not engaged in protected speech because his statements were made pursuant to his job duties as a calendar deputy. The Court defined speech made pursuant to an employee's job duties as "speech that owes its existence to a public employee's professional responsibilities." *Id.* at 421. The Court stated that a "practical" inquiry is necessary to determine whether speech owes its existence to an employee's professional duties. "To determine whether [a] statement receives First Amendment protection ... we look to the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 424-425.

---

[2] Here, it is beyond peradventure that reporting child abuse is a matter of public concern because parents and the community have an interest in keeping their children safe from harm while in school. In this case, it is not merely an internal staff issue. As for justification for the disparate treatment of Lebowitz, the averred pretextual nature of her termination will be explored in discovery. These two elements are questions of fact.

4

The Court noted however, that "conducting these inquiries sometimes has proved difficult"...because of "the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors...to furnish grounds for dismissal." *Id.* at 418 (*quoting Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 569). The Court when on to opine that:

> Government employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services...At the same time, the Court has recognized that a citizen who works for the government is nonetheless a citizen. The First Amendment limits the ability of a public employer to leverage the employment relationship to restrict...the liberties employees enjoy in their capacities as private citizens. [Citation omitted.] So long as employees are speaking as citizens about matter of public concern, they must face only those speech restrictions that are necessary for their employer to operate efficiently and effectively. [Citations omitted.]

*Id.* at 419.

Returning to the Court's holding in *Garcetti*, it did not consider as dispositive the fact that Ceballos expressed his views inside his office, rather than publicly, or that the memorandum concerned the subject matter of Ceballos' employment. *Id.* at 421. What was dispositive was the fact that Ceballos wrote his memorandum because that was part of what he, as a calendar deputy, was employed to do. *Id.*

*Garcetti* should inform the Court's decision in this case. When looking at the content, form and context of Lebowitz's report of suspected child abuse, it becomes clear (and it is "plausible") that Lebowitz was not employed to report suspected child

abuse, as Ceballos was employed to supervise attorneys and prepare filings.[3] Indeed, if that were the case, then the kitchen staff at Tacony were also employed to report child abuse, as were the secretaries and maintenance staff (all mandated reporters under the Child Protective Services Act). Rather, she was employed to provide programs and social services to students. (Complaint, ¶16.) In addition, Lebowitz's report of suspected child abuse did not interfere with Tacony's ability to operate efficiently and effectively. Much to the contrary, it was the staff member physically dragging a student down the hallway that interfered with Tacony efficiently and effectively managing its operations. For defendants to argue that the report of child abuse disrupted the school's operations would be disingenuous since everyone working in the school would be expected to report abuse, regardless of whether the employee reported it as part of their official duties (what they were hired to do) or as a private citizen.

What *Garcetti* does not decide is whether its analysis would apply in the same manner to a case involving speech related to academic scholarship or classroom teaching. *Id.* at 425.[4] Lebowitz is not certain, nor has it been decided by

---

[3] In fact, Ceballos did not dispute that he prepared his memorandum pursuant to his duties as a prosecutor. *Garcetti.* 547 U.S. at 421. *Nowhere* in Lebowitz's complaint does she aver that she made her report of child abuse pursuant to her duties as a social worker while working at Tacony. She avers that she was a public employee (¶5) hired as a social worker by the Santilli defendants and Tacony (¶15), that she observed the physical restraint of a student by a staff member (¶20) and that she reported what she had observed to her supervisor (¶21) because she reasonably believed the observed conduct violated, in part, the Child Protective Services Law (¶22). The fact that she observed the abuse while at work plainly is not dispositive.

[4] See *Gorum v. Sessoms*, 561 F.3d 179, 186 n. 6 ("The full implications of the Supreme Court's statements in *Garcetti* regarding "speech related to scholarship or teaching" are not clear. *See Emergency Coal. to Defend Educ. Travel v. United States Dep't of the Treasury*, 545 F.3d 4 16-18 (D.C. Cir. 2008) (Edwards, J. concurring); Judith Areen, *Government as Educator: A New Understanding of First Amendment Protection of Academic Freedom and Governance*, 97 Geo. L.J. (forthcoming Apr. 2009)).

6

the Third Circuit, that "speech related to scholarship or teaching" would apply to the facts of this case. However, it is Lebowitz's position that she clearly was not performing any job duty as she was walking down the hallway and saw another staff member physically dragging and restraining a student. Her report of abuse thereafter could have arisen under the statutory obligation of a mandated reporter or independently as a private citizen.

Since *Garcetti,* courts have closely examined whether an employee's speech was part of his or her job responsibilities. For example, in *Botello v. Gammick*, 347 Fed. Appx. 277, 2009 WL 201520 (9th Cir. 2009), the Ninth Circuit, citing *Garcetti*, reversed a lower court dismissal, concluding that:

> The district court erred in finding Botello did not engage in constitutionally protected speech. His comments to the State of Nevada Attorney General ("AG")-questioning the accuracy of a nurse in the Child Abuse Response and Evaluation ("CARES") program and requesting an audit-involved a matter of public concern and were made as a private citizen, rather than in his official capacity. Botello was acting outside the scope of his official duties and was attempting to reveal potential wrongdoing by the DA's office or the CARES program, not expressing personal dissatisfaction with internal office affairs or furthering some purely private interest. [Citation omitted.] Identifying himself as a "detective" and seeking protection from employer retaliation do not change the nature of his speech from a public concern to a private grievance or indicate that he was not acting as a private citizen. [Citation omitted.] Thus, Botello established the first prong of his First Amendment retaliation claim.

*Id.* 347 Fed.Appx. at 279. [5]

Defendants argue that Lebowitz's reporting of the incident was done in the course of her employment and therefore is not protected speech, relying on the Third

---

[5] Lebowitz recognizes that the Court is not bound by a Ninth Circuit decision, however, the facts and holding in *Botello* are instructive in this case.

7

Circuit's holding in *Skrutski v. Marut*, 288 Fed.Appx. 803, 2008 WL 2787434 (C.A.3 (Pa.). It is apparent, however, that the complaints made by the plaintiff in *Skrutski* concerning his performance as a supervisor in the Pennsylvania State Police Force were made solely in his employment capacity and within the police force's chain of command. Under those circumstances, the Pennsylvania State Police Force may well have had legitimate concerns about the handling of such matters.

Here, in contrast, Lebowitz was required, as a mandated reporter under the Child Protective Services Act, to report a matter of public concern, i.e., the physical abuse of a child by one of defendants' staff members. Thus, Lebowitz' reporting obligation was a statutorily-created obligation, like Officer Reilly's obligation to comply with a subpoena for trial in *Reilly v. City of Atlantic City*, 532 F.3d 216 (2008), where the Third Circuit held that Officer Reilly's First Amendment rights did not disappear when he performed a duty placed on him as a citizen, rather than as an employee.[6] In that case, Reilly, an Atlantic City police officer, testified for the government in a police corruption trial and subsequently was disciplined. The Third Circuit noted that Reilly's obligation to speak truthfully arose out of his duty as a citizen, and thus such speech was afforded First Amendment protection:

> T]he action of offering truthful testimony is the responsibility of every citizen, and the First Amendment protection associated with fulfilling that duty of citizenship is not vitiated by one's status as a public employee. That an employee's official responsibilities provided the initial impetus to appear in court is immaterial to his/her independent obligation as a citizen to testify truthfully. When a government employee testifies truthfully, s/he is not "simply performing his or her

---

[6] Even if the job description for a social worker at Tacony includes reporting child abuse to supervisors, the obligation to do so is still statutorily created, and not an internal policy of interest only to the operations of Tacony.

8

> job duties," rather, the employee is acting as a citizen and is bound by the dictates of the court and the rules of evidence.

*Reilly*, 532 F.3d at 231.

Similarly, Judge Rambo of the Middle District of Pennsylvania recognized the distinction between a government employee's job-mandated responsibilities and those arising as a citizen and concluded: "Thus, even if an employee's official responsibilities compel him to appear in court, testimony under oath, is the sort of conduct performed by citizens and protected by the First Amendment." *Karchnak v. Swatara Township*, 2009 WL 2139280 (M.D. Pa 2009.).

If given leave to amend her complaint, Lebowitz will plead that she reported the child abuse as a private citizen concerned for the safety and welfare of a student. That she may be viewed as having an independent obligation as a mandated reporter does not vitiate her First Amendment rights to report wrongdoing to her employers without fear of retaliation. The report concerned wrongdoing by a school employee and clearly was a matter of public concern. There is no justification for defendants to have treated Lebowitz' report differently than a report by any other employee concerning something other than observed abuse. In short, Lebowitz has adequately asserted her First Amendment retaliation claim.

### C. Lebowitz Has Sufficiently Pled Conspiracy Under the First Amendment

As to defendants' contention that Lebowitz has failed to plead a conspiracy under the First Amendment, that contention also lacks merit. To allege a conspiracy, a party must make specific factual allegations of a combination, agreement or understanding among all or between any of the Defendants to plot, plan, or conspire to

9

carry out the alleged chain of events." *Rose v. Bartle*, 871 F.2d 331, 366 (3d Cir. 1989).

As stated in Lebowitz' briefs in opposition to defendants' motions to dismiss, paragraphs 17 through 29 of her complaint (under "FACTS") provide more than an adequate factual specificity as to (1) the period of the conspiracy – from September 30, 2009 to October 23, 2009; (2) the object of the conspiracy – to terminate her employment so as to cover-up wrongdoing, avoid jeopardizing funding and protect them from potential legal consequences; (3) the overt acts taken in furtherance of the conspiracy – jointly making the decision to terminate ; and (4) the action taken by each co-conspirator in furtherance of the conspiracy – reaching an agreement with each other to terminate Lebowitz' employment.

The above averments are sufficient to state a cause of action for conspiracy among the defendants. Moreover, given the averments in Lebowitz' complaint about the relationship between the Tacony defendants and the Santilli defendants, it is plausible that the Santilli defendants consulted with Tacony and its upper management (and the Board of Trustees of Tacony) regarding the report of abuse and shortly thereafter conspired to terminate Lebowitz' employment.

Here, in addition to the facts already pled, which support a plausible cause of action for conspiracy, discovery will ferret out more specific details about the actions taken by the various defendants in furtherance of the conspiracy.  In the meantime, if the Court is inclined to conclude that the First Amendment conspiracy claim is not sufficiently pled, leave to file an amended complaint will cure any defect.

### D. Lebowitz Has Sufficiently Pled a Pennsylvania Whistleblower Act Violation

The Santilli defendants argue that Lebowitz's complaint fails to state a claim against them under the Pennsylvania Whistleblower Act ("Act") because they were not "public employers" and were instead a private, for-profit corporation.[7] *Dennis v. Sparks*, 449 U.S. 24 (1980) is instructive on this point. In that case, the Supreme Court held that private parties acting in a conspiracy with a state official to deprive others of constitutional rights are also acting 'under color' of state law." Id. at 27-28. *See also Melo v. Hafer*, 912 F.2d 628, 638 (3d Cir. 1990) (rejecting defendant's argument that private parties can be viewed as acting under color of state law only when state or municipal officials substituted the judgment of private parties for their own judgment); *Victory Outreach Center v. Melso*, 371 F. Supp. 642, 646 (E.D. Pa 2004) (To establish that a private actor is acting under color of state law, Plaintiffs must show that there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.").

Lebowitz avers such a close nexus in paragraph 34 of her complaint:

> 34. At all times relevant hereto, the relationship between Defendants Tacony and Santilli and Thompson, contractual or otherwise, was sufficiently close that the conduct of both Defendants, acting by and through their directors, officers, trustees, officials, agents and/or employees, including Defendants Cruise and Gerald Santilli, acting within the Scope of their employment, deprived Lebowitz of her constitutional rights.

---

[7] As for the Tacony defendants, it is Lebowitz' position that the complaint satisfies the *Twombly* standard and avers sufficient facts to support all of the elements of a claim under the Whistleblower Act.

(Complaint, ¶34.)

In addition, the language of the Pennsylvania Whistleblower Act itself refutes defendants' argument that a cause of action cannot lie against them because they are not "public employers." The Whistleblower law defines an '"employer" as: "[A] person supervising one or more employees, including the employee in question; a superior of that supervisor; <u>or an agent of a public body</u>." 43 P.S. §1422 [emphasis added]. Here, the complaint alleges that "At all relevant times hereto, Defendant Santill & Thompson acted by and through its directors, officers, trustees, board members, employees and/or agents, <u>as an agent for defendant Tacony</u> and supervisor and/or employer of Lebowitz. (Complaint, ¶10.) Further, the complaint asserts that "Defendant Gerald L. Santilli (Gerald Santilli"), the founder and head of Tacony and a Partner at Santilli & Thompson, was at all times relevant hereto, Lebowitz' supervisor and/or employer." (Complaint, ¶11.)

Taking Lebowitz' allegations as true, and discounting the Santilli defendants' assertion (as argued by their counsel at the oral argument) that they were <u>merely</u> "consultants," the complaint satisfies the "employer" prong of the Whistleblower statute. Moreover, physical abuse and restraint satisfies, without a doubt, the definition of "wrongdoing" under the Whistleblower law. To characterize such conduct as merely technical or minimal in nature is disingenuous.

E. **Lebowitz Has Sufficiently Pled a Violation of Pennsylvania's Child Protective Services Law**

Respectfully, given all of the facts averred in her complaint taken as a whole and accepted as true, it is Lebowitz' position that her complaint sufficiently avers a cause of action against all of the defendants for a violation of Pennsylvania's Child

Protective Services Act, 23 Pa. C.S.A. §6301 *et seq.* Lebowitz pled that she was a person required to report suspected child abuse, she had reasonable cause to believe that a student was a victim of child abuse, and that she was fired in retaliation for reporting such abuse. 23 Pa. C.S.A. §6311. Furthermore, given all of the averments in her complaint concerning the close relationship among all of the defendants (public and private), no defendant should be dismissed at the pleading stage from this claim.

Short of repeating the arguments in Lebowitz' briefs in opposition to defendants' motions to dismiss, there are no additional arguments to be made in this Supplemental Brief.

### F. Lebowitz Has Sufficiently Pled a Pennsylvania State Law Conspiracy Claim Against All Defendants

Defendants' final arguments, regarding the purported deficiency of the complaint to allege a state law civil conspiracy are duplicative of their arguments regarding the First Amendment conspiracy claim. They argue that that Lebowitz does not identify any defendant by name in Count V or recite any narrative facts supporting a conspiracy claim in Count V. The response here is the same made by Lebowitz in her briefs in opposition to defendants' motions to dismiss: in paragraph 61 Lebowitz incorporates by reference the preceding paragraphs of the complaint (1-60) which aver with appropriate specificity the necessary elements of the state law conspiracy claims against each defendant. Again, if necessary, an amended complaint will cure any deficiencies.

### III. CONCLUSION

Lebowitz has sufficiently pled her individual claims in Counts One through Five of her complaint. For the reasons set forth in this Supplemental Brief and in her briefs in opposition to defendants' motions to dismiss, defendants' motions are without merit. Accordingly, Lebowitz respectfully requests the Court deny defendants' motions to dismiss.

Respectfully submitted,

**ZARWIN, BAUM, DeVITO, KAPLAN, SCHAER & TODDY, P.C.**

__/s/_____
Jill Fisher, Esquire
David F. McComb, Esquire

1818 Market Street, 13th Floor
Philadelphia, PA  19103
Ph: (215) 569-2800
Fax: (215) 569-1606
*Attorneys for Plaintiff Hillary Lebowitz*

Date: July 19, 2010

## CERTIFICATE OF SERVICE

I, Jill Fisher, certify that today I caused to be served, via electronically and first class mail, postage prepaid, Plaintiff's Supplemental Brief in opposition to Defendants' Motions to Dismiss the Complaint, upon the following:

> John P. Gonzales, Esquire
> Marshall, Dennehey, Warner, Coleman & Goggin
> 620 Freedom Business Center, Suite 300
> King of Prussia, PA 19406
>
> and
>
> Tracy A. Walsh, Esquire
> Weber Gallagher Simpson Stapleton Fires & Newby, LLP
> 2000 Market Street, 13th Floor\
> Philadelphia, PA 19103

___/s/_____
JILL FISHER

Dated: July 19, 2010